Slip Op. 17- 108

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **UNITED STATES,** | |
| **Plaintiff,** | |
| **v.** | **Before: Jennifer Choe-Groves, Judge** |
| **DELADIEP, INC. and JOHN DELATORRE,** | **Court No. 16-00241** |
| **Defendants.** | |

<u>OPINION</u>

[Granting in part Plaintiff's motion for the entry of a default judgment.]

Dated: August 23, 2017

<u>Jason M. Kenner</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for Plaintiff the United States.  With him on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director.  Of counsel on the brief was <u>Bayleigh J. Pettigrew</u>, Office of the Associate Chief Counsel, U.S. Customs and Border Protection, of Long Beach, CA.

Choe-Groves, Judge:  The United States ("Plaintiff" or "Government") brought this

action against Deladiep, Inc. ("Deladiep") and John Delatorre ("Mr. Delatorre") (collectively,

"Defendants") to recover unpaid duties and a civil penalty under Section 592 of the Tariff Act of

1930, as amended, 19 U.S.C. § 1592 (2006).[1]  <u>See</u> Summons, Nov. 4, 2016, ECF No. 1; Compl.,

Nov. 4, 2016, ECF No. 3.  Deladiep is a Delaware corporation with its principal place of

business in Sugar Land, Texas, and Mr. Delatorre is the owner, president, and sole corporate

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions in Title 19 of the U.S. Code, 2012 edition.

officer of Deladiep.  See Compl. ¶ 4.  Plaintiff alleges, *inter alia*, that Defendants made two

entries of raw flexible magnets from the People's Republic of China ("China") and provided

material false information to U.S. Customs and Border Protection ("Customs") indicating that

the entries were not subject to antidumping or countervailing duties.  See id. ¶¶ 23–30.  Plaintiff

contends that Defendants are jointly and severally liable for unpaid duties and a civil penalty

because they failed to exercise reasonable care to ensure that the statements made in connection

with the entries were complete and accurate.  See id.

Before the court is Plaintiff's Motion for the Entry of a Default Judgment.[2]  See Pl.'s

Mot. Entry Default J., May 5, 2017, ECF No. 17.  Because Defendants have failed to plead or

otherwise defend themselves in this action, the Government requests the court to enter a default

judgment against Defendants in the amount of $32,931.53 for unpaid customs duties, plus pre-

judgment interest, and $87,740.60 as a civil penalty for negligent violations of 19 U.S.C.

§ 1592(a).  See id. at 13.

As explained below, the well-pled facts in Plaintiff's complaint and supporting

declarations accompanying Plaintiff's motion establish that Defendants are jointly and severally

liable for negligent violations of 19 U.S.C. § 1592(a).  The court grants in part Plaintiff's motion

for default judgment and enters a default judgment against Defendants in the amount of

---

[2] In support of its motion, Plaintiff has provided the court with declarations and documents from: Robert Theirry, who is a fines, penalties, and forfeitures officer for Customs in Los Angeles, California; Quoc Tran, who is a senior import specialist for Customs in Long Beach, California; Jessica Vandemark, who is a section chief for Customs in the debt management branch; and Paul Sumbi, who is a supervisory import specialist for Customs in the Center of Excellence and Expertise for consumer products and mass merchandise.  See Pl.'s Mot. Entry Default J., May 5, 2017, ECF Nos. 17-3–17-6.

$32,931.53 for unpaid customs duties, together with pre-judgment interest, and $17,548.12 as a

civil penalty, which is twenty percent of the maximum penalty allowed by statute.

## BACKGROUND

On September 17, 2008, the U.S. Department of Commerce ("Commerce") issued

antidumping and countervailing duty orders on imports of raw flexible magnets from the

People's Republic of China ("China").  See Raw Flexible Magnets from the People's Republic

of China, 73 Fed. Reg. 53,847 (Dep't Commerce Sept. 17, 2008) (antidumping duty order) ("AD

Order"); Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg. 53,849

(Dep't Commerce Sept. 17, 2008) (countervailing duty order) ("CVD Order").  The scope of

both orders covers "certain flexible magnets regardless of shape, color, or packaging."  AD

Order, 73 Fed. Reg. at 53,847; CVD Order, 73 Fed. Reg. at 53,850.  Magnets subject to these

orders imported from exporters that have not been assigned an individual rate are subject to an

antidumping duty rate of 185.28 percent and a countervailing duty rate of 109.95 percent.  See

AD Order, 73 Fed. Reg. at 53,848; CVD Order, 73 Fed. Reg. at 53,850.  To assist Customs in

determining whether imported merchandise is subject to these antidumping and countervailing

duty orders, the scope of both orders provides that products subject to the orders are classifiable

principally under subheadings 8505.19.10 and 8505.19.20 of the Harmonized Tariff Schedule of

the United Sates ("HTSUS").[3]  See AD Order, 73 Fed. Reg. at 53,847; CVD Order, 73 Fed. Reg.

at 53,850.

_____

[3] HTSUS heading 8505 covers "[e]lectromagnets; permanent magnets and articles intended to
become permanent magnets after magnetization; electromagnetic or permanent magnet chucks,
clamps and similar holding devices; electromagnetic couplings, clutches and brakes;

(footnote continued)

Plaintiff alleges that Defendants made two entries of flexible magnet sheets from China on November 10, 2011 (Entry No. GL502557066) ("November Entry") and January 3, 2012 (Entry No. GL502608083) ("January Entry") through the ports of Los Angeles and Long Beach, California.[4]  See Compl. ¶ 5; see also Compl. Ex. A (entry summaries).  The entry documents for the November Entry classified the imported magnets under HTSUS subheading 8505.19.3000[5] and the commercial invoice described the imported merchandise as five thousand pieces of "Magnetic Rubber Sheet[s]."  See Compl. Ex. A; Decl. Supervisory Import Specialist Paul Sumbi in Supp. Gov't's Mot. Default J. Ex. 1, May 5, 2017, ECF No. 17-6 ("Sumbi Decl.").  The entry documents for the January Entry classified the merchandise under HTSUS subheading 8505.19.1000 and the commercial invoice described the imported merchandise as two thousand pieces of "rubber magnet sheet[s]."  See Compl. Ex. A; Sumbi Decl. Ex. 4.  Defendants declared that both entries were Type 01 entries not subject to antidumping and countervailing duties.  See Compl. Ex. A; Decl. Robert Theirry in Supp. Gov't's Mot. Default J. ¶ 3, May 5, 2017, ECF No. 17-3 ("Theirry Decl."); Sumbi Decl. ¶¶ 2, 4.  Defendants did not deposit antidumping and countervailing duties for either entry.[6]  See Sumbi Decl. ¶¶ 2, 4.

---

electromagnetic lifting heads; parts thereof."  HTSUS subheading 8505.19.1000 covers "[p]ermanent magnets and articles intended to become permanent magnets after magnetization: . . . [o]ther: . . . [f]lexible magnets."  HTSUS subheading 8505.19.2000 covers "[p]ermanent magnets and articles intended to become permanent magnets after magnetization: [o]ther: . . . composite good containing flexible magnets."

[4] Deladiep was listed as the importer of record for both entries.  See Compl. Ex. A.

[5] HTSUS subheading 8505.19.3000 covers "[p]ermanent magnets and articles intended to become permanent magnets after magnetization: . . . [o]ther: . . . [o]ther."

[6] An importer's liability to pay duties accrues upon entry into "Customs territory of the United

(footnote continued)

On May 30, 2012, Customs issued a request for information to Deladiep seeking a sample of the magnetic rubber sheets contained in the November Entry.[7]  See id. at Ex. 6.  Customs did not receive a response and issued a notice of action for the November Entry on July 29, 2012, which proposed (1) changing the classification of the merchandise from HTSUS subheading 8505.19.3000 to HTSUS subheading 8505.19.1000, (2) changing the entry type from a Type 01 entry to a Type 03 entry to reflect that the imported magnets were subject to antidumping and countervailing duties pursuant to the orders on raw flexible magnets from China, and (3) rate-advancing the entry.[8]  See id. at Ex. 7.  The notice of action also directed Deladiep to submit antidumping duties at a rate of 185.28 percent, countervailing duties at a rate of 109.95 percent,

---

States." 19 C.F.R. § 141.1(a).  The United States employs a retrospective duty assessment system under which an importer's final liability for antidumping and countervailing duties is unknown at the time of entry.  See 19 C.F.R. § 351.212(a).  Upon entry of merchandise subject to an antidumping or countervailing duty order, an importer must post a cash deposit or bond as security in an amount equal to the estimated antidumping or countervailing duties owed until the final duty liability is determined and the entry is liquidated.  See 19 C.F.R. §§ 141.101, 141.103.

[7] Customs issued the request for information after Defendants' customs broker, Pacific Century Customs Services, filed a post entry amendment form requesting to change an alleged calculation error concerning the declared value of the merchandise in the November Entry.  See Sumbi Decl. ¶ 6.  Customs rejected the post entry amendment because antidumping and countervailing duties were due on the entry and had not been paid.  See id. at Ex. 9.  Customs informed Deladiep that it would need to resubmit the post entry amendment along with payment of the antidumping and countervailing duties.  See id.; see also Post-Entry Amendment (PEA) Processing Test: Modification, Clarification, and Extension, 76 Fed. Reg. 37,136, 37,136 (Dep't Commerce June 24, 2011) (clarifying that "for any PEA which results in Antidumping/Countervailing Duty (AD/CVD) cash deposits due (or bond, if allowed), such deposits or bond are due with the submission of the PEA").  Deladiep neither resubmitted a post entry amendment nor paid the antidumping and countervailing duties.  See Sumbi Decl. ¶ 9.

[8] An entry is rate-advanced when it is "liquidated at a higher rate" than the rate claimed by the importer.  See United States v. Horizon Prods. Int'l, Inc., 39 CIT __, 82 F. Supp. 3d 1350, 1354 (2015).

and a non-reimbursement statement.[9]  See id.  In the event that Deladiep disagreed with the

proposed action, Customs advised Deladiep that it must provide a sample of the imported

magnetic rubber sheets and provide a reason why the product is outside the scope of the

antidumping and countervailing duty orders on raw flexible magnets from China within twenty

days.  See id.

On behalf of Deladiep, Mr. Delatorre sent a letter to Customs dated July 30, 2012 that

contained a sample of the magnetic rubber sheets and product information from a website that

purportedly sells the merchandise to law enforcement entities.  See id. at Ex. 8.  The letter

neither referenced nor disputed the changes proposed by Customs in the notice of action.  Mr.

Delatorre sent an additional e-mail to Customs on August 14, 2012 stating that the merchandise

was imported for a friend's business rather than for his own business endeavors.  See id. at Ex.

11.  The e-mail also requested that Customs refrain from assessing antidumping and

countervailing duties on the imported merchandise because Mr. Delatorre's new customs broker

had not informed Mr. Delatorre that the imported magnets were subject to the orders.  See id.

The e-mail did not provide any reason regarding why the magnets were outside the scope of the

orders.  Customs also received a letter on August 30, 2012 from a company called SooHoo,

---

[9] According to Commerce's regulations, an importer must file a statement with Customs
certifying that it has not received payment or a refund of antidumping or countervailing duties
for the imported merchandise.  See 19 C.F.R. § 351.402(f)(2).  Failure to provide a non-
reimbursement statement results in a presumption that the exporter or producer paid or
reimbursed the importer for antidumping or countervailing duties, in which case antidumping
and countervailing duties are doubled to calculate the potential loss of revenue.  See 19 C.F.R.
§ 351.402(f)(3).

Inc.[10] disagreeing with Customs' decision that the magnet sheets imported by Deladiep were

within the scope of the antidumping and countervailing duty orders because the merchandise fell

within an exception for printed flexible magnets.[11]  See id. at Ex. 13.  Upon examination of the

sample submitted by Mr. Delatorre, Customs confirmed that the imported magnets were in fact

subject to antidumping and countervailing duties and that the exception for printed flexible

magnets did not apply because the printing on the imported magnets consisted of only stripes,

lines, a trade name, or trade mark.[12]  See Theirry Decl. ¶¶ 4, 7; Sumbi Decl. ¶¶ 13–14, Ex. 14.

---

[10] SooHoo, Inc. provided Customs with images of magnets that were similar but not identical to the magnets imported by Defendants.  See Sumbi Decl. ¶ 12, Ex. 13.  It is unclear whether SooHoo, Inc. was related to Deladiep or whether SooHoo, Inc. had authority to speak on behalf of Defendants.

[11] The antidumping and countervailing duty orders contain an express exclusion for:

> printed flexible magnets, defined as flexible magnets (including individual magnets) that are laminated or bonded with paper, plastic, or other material if such paper, plastic, or other material bears printed text and/or images, including but not limited to business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like.  This exclusion does not apply to such printed flexible magnets if the printing concerned consists of only the following: a trade mark or trade name; country of origin; border, stripes, or lines; any printing that is removed in the course of cutting and/or printing magnets for retail sale or other disposition from the flexible magnet; manufacturing or use instructions (e.g., "print this side up," "this side up," "laminate here"), printing on adhesive backing (that is, material to be removed in order to expose adhesive for use such as application of laminate) or on any other covering that is removed from the flexible magnet prior or subsequent to final printing and before use; non-permanent printing (that is, printing in a medium that facilitates easy removal, permitting the flexible magnet to be re-printed); printing on the back (magnetic) side; or any combination of the above.

AD Order, 73 Fed. Reg. at 53,847; CVD Order, 73 Fed. Reg. at 53,850.

[12] Customs found that the sample provided by Mr. Delatorre was a raw flexible magnet that did not fall within the exception for printed flexible magnets because it is "laminated with a clear

(footnote continued)

In the interim, Customs issued a similar notice of action for the January Entry on August 13, 2012.  <u>See</u> Sumbi Decl. Ex. 10.  Customs directed Deladiep to submit the antidumping and countervailing duties along with a non-reimbursement statement.  <u>See</u> <u>id.</u>  Defendants neither paid the duties for the two entries nor submitted a non-reimbursement statement following the issuance of the notices of action.  <u>See</u> Compl. ¶¶ 11, 12; <u>see also</u> Theirry Decl. ¶ 10.

Customs issued an informed compliance notice to Deladiep on September 28, 2012, explaining that the imported merchandise was subject to antidumping and countervailing duties and requesting a deposit for the duties owed.  <u>See</u> Sumbi Decl. Ex. 15.  Customs informed Deladiep again that it could resubmit a post entry amendment after paying the requested duties. <u>See</u> <u>id.</u>  Customs also provided Deladiep with information regarding how to request a scope ruling from Commerce if Deladiep believed that the imported magnets were outside the scope of the orders.  <u>See</u> <u>id.</u>  Defendants did not respond to the notice, did not deposit the requested duties, and there is no indication that Defendants requested a scope ruling regarding the imported magnets.  <u>See</u> <u>id.</u> ¶ 15.

Pursuant to liquidation instructions issued by Commerce, Defendants' entries were liquidated at the cash deposit rate in effect at the time of entry.  <u>See</u> Compl. ¶ 14; <u>see also</u> Theirry Decl. ¶ 9; Decl. Jessica Vandemark in Supp. Gov't's Mot. Default J. ¶¶ 3, 5, May 5, 2017, ECF No. 17-5 ("Vandemark Decl.").  Customs assessed antidumping duties at a rate of

---

material where the words 'TEMPSHIELD NET' are printed at the bottom of the magnetic piece. In addition, a yellow diagonal line is displayed on this magnet." Sumbi Decl. Ex. 14.  Customs took the additional step of consulting Commerce to confirm that the imported magnets were subject to the antidumping and countervailing duty orders on raw flexible magnets on China. <u>See</u> <u>id.</u> ¶¶ 13–14.

185.28 percent and countervailing duties at a rate of 109.95 percent.  See Compl. ¶ 14; Theirry

Decl. ¶ 9; Vandemark Decl. ¶¶ 3, 5.  Customs issued a bill for the unpaid duties for the

November Entry in the amount of $62,731.66 and a bill for the unpaid duties for the January

Entry in the amount of $15,145.40.[13]  See Compl. ¶ 14; Vandemark Decl. ¶¶ 3, 5.

Following nonpayment of the bills, Customs issued a pre-penalty notice on July 23, 2013

notifying Defendants of Customs' intent to issue a claim for a monetary penalty for violations of

19 U.S.C. § 1592(a).  See Compl. ¶ 16; Theirry Decl. Ex. 1.  The notice explained that the two

entries should have been presented to Customs as Type 03 entries classified under HTSUS

subheading 8505.19.1000.  See Theirry Decl. Ex. 1.  Customs estimated a total potential loss of

revenue of $44,116.22 due to Defendants' misclassification of the November Entry and

misidentification of both entries as Type 01 entries not subject to antidumping and

countervailing duties.  See id.  Customs proposed a monetary penalty for negligent violations of

the penalty statute in the amount of $87,740.60, which Customs calculated to be the domestic

value of the merchandise.[14]  See id.  Defendants were given thirty days to respond to the pre-

---

[13] Customs calculated the bills based on the declared values for each entry ($12,543.00 and $2,400.00).  See Theirry Decl. ¶ 9.  Because Defendants did not submit a non-reimbursement statement, Customs was authorized to double the antidumping and countervailing duties owed. See 19 C.F.R. § 351.402(f)(3).  In calculating Defendants' duty liability, Customs doubled only the antidumping duties on the November Entry and doubled both the antidumping and countervailing duties for the January Entry.  See Compl. ¶ 14.  The billed amounts of $62,731.66 and $15,145.40 represent Customs' assessment of antidumping and countervailing duties, plus accrued interest pursuant to 19 U.S.C. § 1677g.

[14] The statutory maximum penalty for a violation under the negligence standard affecting the assessment of duties is the lesser of the domestic value of the merchandise or two times the Government's loss of revenue.  See 19 U.S.C. § 1592(c)(3)(A).  There is no statutory definition for the term "domestic value."  Customs has defined the term "domestic value" as "the price at

(footnote continued)

penalty notice in order to avoid the issuance of a notice of penalty.  See id.  Defendants did not

respond to the pre-penalty notice and a penalty notice was issued on August 30, 2013 demanding

payment of a civil penalty.  See Compl. ¶ 17; Theirry Decl. ¶¶ 15, 16, Ex. 2.  Customs issued

demands for payment on November 22, 2013 and January 9, 2014.  See Theirry Decl. Ex. 3.

Defendants did not respond to the penalty notice or the letters demanding payment.  See Theirry

Decl. ¶¶ 15, 17.

        The outstanding duties continued to accrue post-liquidation interest.  See Compl. ¶ 18;

Vandemark Decl. ¶¶ 10–11.  The Government recovered $50,000 from Defendants' surety,

which left a remaining balance of $32,931.53 in unpaid duties.[15]  See Compl. ¶ 18; Vandemark

Decl. ¶¶ 7–11.  To date, the Government has not received payment of the balance of the

outstanding duties or the demanded monetary penalty.  See Compl. ¶ 22.

---

which such or similar property is freely offered for sale at the time and place of appraisement, in
the same quantity or quantities as seized, and in the ordinary course of trade." 19 C.F.R.
§ 162.43(a).  Although the regulatory definition relates to the appraisement of seized property,
Customs applied this definition to its calculation of domestic value for purposes of calculating
the potential penalty for Defendants' violations of 19 U.S.C. § 1592(a).  See Declaration of Quoc
Tran in Supp. Gov't's Mot. Default J. ¶ 3, May 5, 2017, ECF No. 17-4 ("Quoc Tran Decl."); see
also United States v. Callanish Ltd., 36 CIT __, Slip Op. 12-15, at *7–8 (Feb. 1, 2012)
(explaining that the regulatory definition reasonably can be construed to apply to domestic value
calculations for purposes of penalty assessment under 19 U.S.C. § 1592(a)).  To calculate the
domestic value of Defendants' entries, Customs calculated the sum of: freight on board value,
ocean freight, marine insurance, broker fees and inland freight, ordinary duties under the
HTSUS, antidumping duties, countervailing duties, merchandise processing fees, and harbor
maintenance fees.  See Quoc Tran Decl. ¶ 3.  Customs also factored in profit and general
expenses at a rate of forty-five percent.  See id.  The calculation resulted in a total domestic value
of $87,740.60.  See id. ¶¶ 3–8.  Customs proposed a penalty based on the domestic value of the
merchandise because it was less than two times the Government's loss of revenue, $88,232.44
(double the antidumping and countervailing duties owed on each entry).  See Compl. ¶ 16;
Theirry Decl. ¶¶ 10–13.

[15] At the time the surety's bond was applied, the balance of the unpaid duties was $67,215.50 for
the November Entry and $15,716.03 for the January Entry.  See Vandemark Decl. ¶¶ 10–11.

The Government commenced this enforcement action on November 4, 2016 to recover the unpaid antidumping and countervailing duties as well as a civil penalty.[16]  See Summons; Compl.  On March 1, 2017, the Government filed a request for the Clerk of the Court to enter default against Defendants due to their failure to respond to the complaint or otherwise appear in this action.[17]  See Request for Entry of Default, Mar. 1, 2017, ECF No. 8.  In a letter dated March 3, 2017, the Court informed Defendants that the Government had filed a request to enter a default against Defendants, recommended that Defendants obtain counsel, and advised Defendants that, upon request, the Court may attempt to make arrangements for pro bono legal representation in the event that Defendants are unable to obtain counsel.[18]  See Letter Filed by the Court Concerning Obtaining Legal Counsel, Mar. 3, 2017, ECF No. 11.  The Court requested that Defendants respond to the letter by March 31, 2017 to avoid the entry of default.  See id. Defendants did not respond to the Court's letter and, pursuant to USCIT Rule 55(a), the Clerk of the Court entered default against Defendants on May 10, 2017.  See Order, May 10, 2017, ECF

---

[16] The summons and complaint were served on Defendants in Sugar Land, Texas by United States Marshals Service on November 16, 2016.  See Marshal's Proof of Service on Mr. Delatorre, Nov. 29, 2016, ECF No. 4; Marshal's Proof of Service on Deladiep, Nov. 29, 2016, ECF No. 5.

[17] Defendants did not file a responsive pleading with the court, but the Government noted that it received a letter from Mr. Delatorre on December 4, 2016.  See Request for Entry of Default 1 n.1, Mar. 1, 2017, ECF No. 8.  In the letter, Mr. Delatorre recounted the events that gave rise to this litigation from his perspective and explained that he could not afford to pay the unpaid duties and civil penalty sought by the Government.  See Conf. Ex. 1 (December 4, 2016 Letter from Mr. Delatorre), Mar. 1, 2017, ECF No. 13.  No document has been filed with the court that can be viewed as a responsive pleading.

[18] The letter issued by the Court was served on Defendants in Sugar Land, Texas by United States Marshals Service on March 6, 2017.  See Marshal's Proof of Service on Defendants John Delatorre and Deladiep, Inc., Mar. 7, 2017, ECF No. 12.

No. 18 (order entering default against Defendants).  The Government has now filed a motion for

the entry of a default judgment against Defendants pursuant to USCIT Rule 55(b).[19]  See Pl.'s

Mot. Entry Default J.  Defendants have not filed any papers in response to the motion.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1582(1) and (3) (2006),[20] which grant

the court exclusive jurisdiction over any civil action commenced by the United States to recover

unpaid customs duties and a civil penalty under 19 U.S.C. § 1592.  The court reviews all issues

*de novo* in actions under § 1592.  See 19 U.S.C. § 1592(e)(1).  Because Defendants have

defaulted by not appearing in this action, the court accepts as true all well-pled facts in the

complaint.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  A party's

default acts as an admission of liability for the well-pled facts in the complaint, but the default

does not operate as an admission of damages alleged in the complaint.  See United States v.

Freight Forwarder Int'l, Inc., 39 CIT __, 44 F. Supp. 3d 1359, 1362 (2015) (citing Cement &

Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 669 F.3d 230,

234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158

(2d Cir. 1992)).  If the well-pled facts of the complaint establish liability for a civil penalty, the

court must decide the amount of the civil penalty *de novo*.  See 19 U.S.C. § 1592(e)(1).  The

court may look beyond the complaint to "determine the amount of damages or other relief,"

"establish the truth of an allegation by evidence," or "investigate any other matter."  See USCIT

---

[19] The Government served the motion for the entry of a default judgment on Defendants at their last known address via U.S. postal service.  See Pl.'s Mot. Entry Default J.

[20] Further citations to Title 28 of the U.S. Code are to the 2006 edition.

R. 55(b); see also United States v. Horizon Prods. Int'l, Inc., 41 CIT __, 229 F. Supp. 3d 1370,

1377–78 (2017) (citing Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC, 958 F. Supp. 2d

588, 593 (D. Md. 2013)).  The court may conduct an evidentiary hearing to determine the

amount of damages, see USCIT R. 55(b), but such a hearing is not required.  See Freight

Forwarder Int'l, Inc., 39 CIT at __, 44 F. Supp. 3d at 1362 (citing Cement & Concrete Workers

Dist. Council Welfare Fund, 669 F.3d at 234).

## DISCUSSION

### A.  Section 1592(a) and Negligence

Under 19 U.S.C. § 1592(a), it is unlawful for any person, by fraud, gross negligence, or

negligence, to "enter, introduce, or attempt to enter or introduce any merchandise into the

commerce of the United States by means of . . . any document or electronically transmitted data

or information, written or oral statement, or act which is material and false."  19 U.S.C.

§ 1592(a)(1)(A).  When the claim for a civil penalty is based on an alleged negligent violation of

19 U.S.C. § 1592(a), the burden of proof is initially on the United States "to establish the act or

omission constituting the violation."[21]  19 U.S.C. § 1592(e)(4).  If the United States satisfies its

burden of proof, the burden then shifts to the alleged violator to prove that "the act or omission

---

[21] Importers are required by statute to use reasonable care when providing Customs with the
information necessary to allow the agency to properly assess duties on the imported
merchandise.  See 19 U.S.C. § 1484(a).  Importers are required to certify that the information
provided to Customs is true and correct.  See 19 U.S.C. §§ 1484(d)(1), 1485(a).  An act or
omission constitutes a negligent violation of 19 U.S.C. §1592(a) if the alleged violator failed to
exercise the degree of reasonable care and competence expected from a person in the same
circumstances to ensure that the statements made and information provided in connection with
the importation of merchandise were complete and accurate.  See 19 C.F.R. Part 171, App.
B(C)(1).

did not occur as a result of negligence." Id.  The alleged violator satisfies its burden of proof by

"affirmatively demonstrat[ing] that it exercised reasonable care under the circumstances."[22]

United States v. Ford Motor Co., 463 F.3d 1267, 1279 (Fed. Cir. 2006).

### 1. The Government's Burden of Proof to Establish the Act or Omission Constituting the Negligent Violations of 19 U.S.C. § 1592(a)

The court must determine whether the Government has met its burden of establishing by

a preponderance of evidence that Defendants committed an act or omission constituting a

negligent violation of the penalty statute.  See 19 U.S.C. § 1592(e)(4); see also St. Paul Fire &

Marine Ins. Co. v. United States, 6 F.3d 763, 769 (Fed. Cir. 1993) (concluding that plaintiffs in

civil cases bear a preponderance of the evidence burden of proof when no statute specifies

otherwise); United States v. Ford Motor Co., 29 CIT 827, 847, 395 F. Supp. 2d 1190, 1208

(2005) (explaining that the Government must establish the elements of the alleged violation of

the penalty statute by a preponderance of the evidence), aff'd in part and rev'd in part on other

grounds, 463, F.3d 1267 (Fed. Cir. 2006).

Defendants made two entries of flexible magnet sheets from China on November 10,

2011 and January 3, 2012.  See Compl. Ex. A.  The record shows that Deladiep, through Mr.

Delatorre, made statements and provided information that indicated the entries were not subject

to antidumping or countervailing duties.  See id.  For the November Entry, Defendants: (1)

described the merchandise in the invoice as "Magnetic Rubber Sheet[s]," (2) classified the

---

[22] The general parameters of what constitutes reasonable care are set forth in Customs' regulations.  See 19 C.F.R. Part 171, App. B(D)(6); see also H. Rep. No. 103–361 at 120 (1993), reprinted in 1993 U.S.C.C.A.N. 2552, 2670 (identifying possible methods by which one may show reasonable care).

imported magnets under HTSUS subheading 8505.19.3000, and (3) declared that the import was

a Type 01 entry not subject to antidumping or countervailing duties.  <u>See</u> Compl. Ex. A; Sumbi

Decl. Ex. 1; Theirry Decl. ¶ 3.  For the January Entry, Defendants: (1) described the merchandise

in the invoice as "rubber magnetic sheet[s]" and (2) declared that the import was a Type 01 entry

not subject to antidumping or countervailing duties.  <u>See</u> Compl. Ex. A; Sumbi Decl. Ex. 4;

Theirry Decl. ¶ 3.

      Based on the entry papers and the sample provided by Mr. Delatorre, Customs

determined that Defendants' descriptions of the imported magnets were inaccurate, the imported

magnets should have been classified under HTSUS subheading 8505.19.1000, and the imported

magnets should have been identified as subject to the antidumping and countervailing duty

orders on raw flexible magnets from China.  <u>See</u> Sumbi Decl. Exs. 7, 10.  Customs found that the

imported magnets fit within the descriptions of the merchandise covered by the antidumping and

countervailing duty orders and that the exception for printed flexible magnets did not apply to

Defendants' magnets.  <u>See</u> <u>id.</u> at Ex. 14; <u>see also</u> <u>supra</u> Background n.12.  Customs also

consulted Commerce to confirm that the imported magnets were subject to the orders.  <u>See</u>

Sumbi Decl. Ex. 14.  Defendants did not provide Customs with any reason as to why the

imported magnets were outside the scope of the orders.  Nor is there any evidence suggesting

that the imported magnets were not covered by the scope of the orders and Defendants have not

requested a scope ruling from Commerce regarding the imported magnets.  Defendants'

statements and information representing that the imported magnets were not covered by the

orders constituted false statements and information that were used to enter merchandise into the

commerce of the United States.

A document, statement, act, or omission is material if it has "the tendency to influence Customs' decision in assessing duties." United States v. Matthews, 31 CIT 2075, 2080, 533 F. Supp. 2d 1307, 1312 (2007) (internal quotations omitted), aff'd, 329 Fed. Appx. 282 (Fed. Cir. 2009); see also 19 C.F.R. Pt. 171, App. B(B) (2011).[23]  The statements at issue here concern the description of the imported merchandise provided within the commercial invoice, the asserted classification of the imported merchandise, and the declaration as to whether the imported merchandise is subject to antidumping or countervailing duties.  All of this information is used by Customs to determine an importer's duty liability.  That is precisely why the law imposes an affirmative obligation on the importer to exercise reasonable care and provide Customs with true and correct information.  See 19 U.S.C. §§ 1484(a), 1485; see also 19 U.S.C. § 1481(a)(3) (requiring the importer to provide a detailed description of the merchandise in the commercial invoice); 19 U.S.C. § 1484(a)(1)(B) (requiring the importer to provide the classification and rate of duty applicable to the merchandise);[24] 19 C.F.R. § 141.61(c) (requiring the importer to identify whether the imported merchandise is subject to an antidumping or countervailing duty order).  The false statements and information provided by Defendants in connection with the two entries affected Customs' ability to determine whether the imported magnets were subject to antidumping and countervailing duties.  The false statements and information had the tendency to influence Customs' assessment of duties, and therefore constituted material statements and

---

[23] Further citations to Title 19 of the Code of Federal Regulations are to the 2011 edition.

[24] The court notes that the scope of the antidumping and countervailing duty orders provide the HTSUS subheadings under which the subject merchandise is classified to assist Customs in properly assessing importer liability for antidumping and countervailing duties.  AD Order, 73 Fed. Reg. at 53,847; CVD Order, 73 Fed. Reg. at 53,850.

information under the statute.  See United States v. Horizon Prods. Int'l, Inc., 39 CIT __, 82 F.

Supp. 3d 1350, 1356 (2015); United States v. Optrex Am., Inc., 32 CIT 620, 631, 560 F. Supp.

2d 1326, 1336 (2008).

The court finds that the well-pled facts of the complaint and supporting declarations

prove by a preponderance of the evidence that Defendants made statements and provided

information that were material and false in violation of 19 U.S.C. § 1592(a).  The Government

has met its burden of proof to support the alleged negligent violations of the statute.

**2.   The Alleged Violator's Burden of Proof to Affirmatively Demonstrate that it Exercised Reasonable Care Under the Circumstances**

Because the Government has met its burden of proof establishing that Defendants have

committed acts that constitute negligent violations of 19 U.S.C. § 1592(a), the burden of proof

shifts to Defendants to show by a preponderance of the evidence that they exercised reasonable

care and "the act or omission did not occur as a result of negligence."  19 U.S.C. § 1592(e)(4);

see also Ford Motor Co., 463 F.3d at 1279.  Defendants have not responded to Plaintiff's motion

for default judgment and have not otherwise appeared in this action.  There is no evidence before

the court that suggests Defendants exercised reasonable care.  Accordingly, Defendants are

jointly and severally liable for negligent violations of 19 U.S.C. § 1592(a).[25]

**B.  Unpaid Duties**

The Government seeks to recover $32,931.53 in unpaid duties.  See Compl. ¶¶ 28–29;

Pl.'s Mot. Entry Default J. 13–14.  Based on the entry papers and the sample provided by Mr.

---

[25] Section 1592 provides that no "person" may, by fraud, gross negligence, or negligence, "enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United

(footnote continued)

Delatorre, Customs determined that Defendants' imported magnets were subject to the

antidumping and countervailing duty orders on raw flexible magnets from China.  Defendants

were liable, therefore, to the Government for antidumping duties at a rate of 185.28 percent and

countervailing duties at a rate of 109.95 percent.  Defendants did not pay the duties.

Government recovered $50,000 from Defendants' surety, leaving a remaining balance of

$32,931.53 in unpaid duties.  See supra Background nn.13, 15.  Section 1592 provides that

Customs shall require the restoration of "lawful duties, taxes, and fees" of which the United

States may have been deprived as a result of a violation of § 1592(a), "whether or not a monetary

penalty is assessed."  19 U.S.C. § 1592(d).  The United States has been deprived of lawful

antidumping and countervailing duties as a result of Defendants' negligent violations of 19

U.S.C. § 1592(a).  Accordingly, the court enters default judgment against Defendants for

$32,931.53 in unpaid duties.

---

States by means of . . . any document or electronically transmitted data or information, written or
oral statement, or act which is material and false."  19 U.S.C. § 1592(a)(1)(A).  As the importer
of record, Deladiep, Inc. is a "person" for purposes of Section 1592.  See 19 U.S.C. § 1401(d)
(defining "[p]erson" as including "partnerships, associations, and corporations").  As the owner,
president, and sole corporate officer of Deladiep, Inc., Mr. Delatorre was personally involved in
introducing the imported magnets into the commerce of the United States and also subject to
liability under Section 1592.  See United States v. Trek Leather, Inc., 767 F.3d 1288, 1299 (Fed.
Cir. 2014) (finding that an individual defendant's "own acts come within the language of [19
U.S.C. § 1592(a)(1)(A)]" for acting on behalf of the corporate importer of record).  Thus,
Defendants are jointly and severally liable for negligent violations of Section 1592.

### C. Pre-Judgment Interest

The Government seeks additional pre-judgment interest on the unpaid duties.[26]  See Compl. ¶ 30; Pl.'s Mot. Entry Default J.  It is within the court's discretion to award pre-judgment interest in actions brought by the Government to recover unpaid duties.  See United States v. Imperial Food Imports, 834 F.2d 1013, 1016 (Fed. Cir. 1987).  The purpose of awarding pre-judgment interest is to "compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."  West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987).  To determine whether to award the Government pre-judgment interest on unpaid duties, the court considers "'the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness.'"  United States v. Great Am. Ins. Co. of N.Y., 738 F.3d 1320, 1326 (Fed. Cir. 2013) (quoting Osterneck v. Ernst & Whinney, 489 U.S. 169, 175–76 (1989)).  Although Defendants are liable for negligent violations of 19 U.S.C. § 1592(a) (the lowest level of culpability under the statute), pre-judgment interest on the unpaid duties is appropriate here in order to compensate the Government for the loss of revenue and to make the Government whole.  See United States v. Am. Home Assurance Co., 789 F.3d 1313, 1329 (Fed. Cir. 2015) (providing that "full compensation should be the court's overriding concern").  Defendants failed to pay the duties owed, despite Customs'

---

[26] The Government initially sought pre- and post-judgment interest on the unpaid duties and the civil penalty, see Compl. ¶¶ 27, 30, but has only requested pre-judgment interest on the unpaid duties in its motion for default judgment.  See Pl.'s Mot. Entry Default J.

numerous requests.  There is no evidence that the Government unreasonably delayed bringing

this action after the conclusion of the underlying administrative penalty procedures.  Therefore,

the court awards the government pre-judgment interest on the unpaid duties from the date of

Customs' final demand for payment through the date of the judgment issued concurrently with

this opinion.[27]  The pre-judgment interest shall be computed at the rate provided in 28 U.S.C.

§ 2644 and in accordance with 26 U.S.C. § 6621.  See United States v. Int'l Trading Servs., LLC,

41 CIT __, 222 F. Supp. 3d 1325, 1336 (2017) (citing Horizon Prods. Int'l, Inc., 39 CIT at __, 82

F. Supp. 3d at 1356).

### D.  Penalty

The remaining issue is whether the Government is entitled to the requested statutory

maximum civil penalty.  See Compl. ¶¶ 23–27; Pl.'s Mot. Entry Default J. 13–14.  The statute

prescribes maximum civil penalties for violations of 19 U.S.C. § 1592 according to the degree of

culpability.  See 19 U.S.C. § 1592(c); see also S. Rep. No. 778, pt. 10, reprinted in 1978

U.S.C.C.A.N. 2211 (providing that the monetary penalty due to section 1592 violations varies

according to the culpability of the importer).  The maximum penalty allowed by statute for

negligent violations of 19 U.S.C. § 1592 that affect the assessment of duties is the lesser of either

the domestic value of the merchandise,[28] or "two times the lawful duties, taxes, and fees of

which the United States is or may be deprived."  19 U.S.C. § 1592(c)(3)(A).  The maximum

penalty in this case is the domestic value of the imported merchandise, which Customs

---

[27] Customs issued its final demand for payment on January 9, 2014.  See Theirry Decl. Ex. 3.

[28] Customs' regulations define "domestic value" as "the price at which such or similar property is freely offered for sale at the time and place of appraisement."  19 C.F.R. § 162.43(a); see also supra Background n.14.

calculated as $87,740.60.  See supra Background n.14.  The court should not presume, however,

that the requested maximum penalty is warranted.  See United States v. Nat'l Semiconductor

Corp., 547 F.3d 1364, 1370 (Fed. Cir. 2008) ("Not only do past cases state that nothing requires

the court to grant Customs's request for the maximum penalty, they also explain that the court

should not presume that the maximum is warranted."); United States v. Complex Mach. Works

Co., 23 CIT 942, 946, 83 F. Supp. 2d 1307, 1312 (1999) ("[T]he law requires the court to begin

its reasoning on a clean slate.  It does not start from any presumption that the maximum penalty

is the most appropriate or that the penalty assessed or sought by the government has any special

weight.").  It is within the court's discretion to determine the appropriate amount of civil penalty

for a violation of 19 U.S.C. § 1592(a).  See 19 U.S.C. § 1592(e)(1) ("[A]ll issues, including the

amount of the penalty, shall be tried de novo"); Ford Motor Co., 463 F.3d at 1285.

The court ordinarily considers fourteen non-exclusive factors to determine the

appropriate penalty amount.[29]  See Complex Mach. Works Co., 23 CIT at 949, 83 F. Supp. 2d at

1314.  Defendants' failure to appear in this action, however, has left the court without a complete

---

[29] The fourteen factors set forth in Complex Mach. Works Co. are: (1) the defendant's good faith effort to comply with the statute; (2) the defendant's degree of culpability; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the regulations involved; (5) the nature and circumstances of the violation at issue; (6) the gravity of the violation; (7) the defendant's ability to pay; (8) the appropriateness of the size of the penalty to the defendant's business and the effect of a penalty on the defendant's ability to continue doing business; (9) that the penalty not otherwise be shocking to the conscious of the court; (10) the economic benefit gained by the defendant through the violation; (11) the degree of harm to the public; (12) the value of vindicating the agency authority; (13) whether the party sought to be protected by the statute had been adequately compensated for the harm; and (14) such other matters as justice may require.  23 CIT 942, 949–50, 83 F. Supp. 2d 1307, 1315.  To summarize, the court considers the defendant's character, the seriousness of the offense, the practical effect of the imposition of the penalty, the benefit gained by the defendant, and public policy concerns.  See Complex Mach. Works Co., 23 CIT at 949–50, 83 F. Supp. 2d at 1316.

record to fully consider the fourteen factors.  See Int'l Trading Servs., LLC, 41 CIT at __, 222 F.

Supp. 3d at 1334 (stating that the court's ability to analyze the fourteen factors is "hindered" by

the defendant's failure to respond).  When a defendant fails to appear, the court will determine

the appropriate penalty amount in light of the totality of the evidence, weighing mitigating

circumstances that support a lower penalty and aggravating circumstances that support a higher

penalty.  See Horizon Prods. Int'l, Inc., 41 CIT at __, 229 F. Supp. 3d at 1378–79 (explaining the

court's differing approaches in determining the appropriate amount of penalty); Int'l Trading

Servs., LLC, 41 CIT at __, 222 F. Supp. 3d at 1334 (considering the Complex Machine Works

Co. factors to the extent possible with an incomplete record due to the defendant's failure to

respond).

       The Government seeks the maximum penalty allowed by statute, but fails to explain why

the penalty requested is appropriate in the circumstances of this case.  See Compl. ¶¶ 23–27;

Pl.'s Mot. Entry Default J. 13–14.  A negligent violation of the statute, without more, does not

warrant entering a judgment for the maximum penalty requested by the Government.  The low

degree of culpability (negligence), the absence of past violations of the statute, and the fact that

this case involves only two entries weigh in Defendants' favor and support mitigation of the

penalty.  Defendants provided Customs with a sample of the imported magnets, see Sumbi Decl.

Ex. 8, which enabled Customs to properly assess duties on the entries.  Defendants had

experience in importing merchandise, but were inexperienced in importing the magnets at issue

that were subject to antidumping and countervailing duties.  See id. at Ex. 11.  The evidence

suggests that Defendants would be unable to pay the antidumping and countervailing duties, let

alone a penalty for negligent violations of 19 U.S.C. § 1592.  See id.  Defendants were

apologetic and vowed not to import merchandise in the future without first consulting Customs.

See id.  The court does not observe any aggravating circumstances in this case.

At the same time, there is a significant public interest in imposing some penalty due to

Defendants' negligence in providing Customs with materially false information and Defendants'

failure to provide full and timely payment of duties.  See Complex Mach. Works Co., 23 CIT at

952, 83 F. Supp. 2d at 1317 (citing United States v. Modes, Inc., 17 CIT 627, 638, 826 F. Supp.

504, 514 (1993)).  Defendants did not make a good faith effort to comply with the statute,[30]

relied on a new customs broker without taking steps to ensure the accuracy of the entry

paperwork, provided an untimely response to Customs' request for information, and were

unresponsive to Customs' notices of action, pre-penalty notice, and demands for payment.

Given the circumstances of the negligent violations of the statute in this case, the court finds it

appropriate to assess a penalty in the amount of $17,548.12, which is twenty percent of the

maximum penalty allowed by statute.  This amount serves to penalize Defendants for their

negligent violations of the statute and lack of cooperation at the administrative level, deters

future violations, and reflects the magnitude of the wrongdoing.

**CONCLUSION**

For the foregoing reasons, the Government's motion for default judgment against

Deladiep, Inc. and John Delatorre is granted in part.  The court will enter a default judgment

---

[30] Customs' guidelines suggest that a good faith effort to comply with the statute requires "exhibit[ing] extraordinary cooperation beyond that expected from a person under investigation for a Customs violation" or taking "immediate remedial action."  19 C.F.R. Part 171, App. B(G)(2)–(3).

against Defendants in the amount of $32,931.53 for unpaid customs duties, plus pre-judgment

interest, and $17,548.12 as a civil penalty.


                                        /s/ Jennifer Choe-Groves
                                         Jennifer Choe-Groves, Judge

Dated:  August 23, 2017
         New York, New York